Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Oriental Bank<br><br>Apelada<br><br>vs.<br><br>C.C.C. Electrical Contractors Inc., Luis R. Colón Rivera<br><br>Apelante | KLAN202500420 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: CZ2022CV00077<br><br>Sobre: Cobro de Dinero, Ejecución de Gravamen Mobilario |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparecen ante nos, C.C.C. Electrical Contractors Inc. (Electrical) y el señor Luis R. Colón Rivera (Sr. Colón Rivera) (en conjunto, apelantes), quienes presentan recurso de apelación en el que solicitan la revocación de la "Sentencia Sumaria" emitida el 11 de marzo de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante dicho dictamen, el foro primario declaró Ha Lugar la "Moción Solicitando Sentencia Sumaria" presentada por Oriental Bank (en adelante, Oriental o apelada).

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, confirmamos el dictamen apelado por los fundamentos que expondremos a continuación.

---

[1] Notificada el 12 de marzo de 2025.

Número Identificador

SEN2025 _____

**I.**

El 13 de junio de 2022, Oriental presentó una "Demanda" sobre cobro de dinero y ejecución de gravamen inmobiliario contra los apelantes.[2] Alegó que, el 29 de marzo de 2021, le otorgó a Electrical un préstamo comercial (2407735-5) por la suma de $324,429.59, con un interés de 7.75%, y fecha de vencimiento para el 29 de marzo de 2024. Indicó que, dicho préstamo se garantizó mediante un "Contrato de Gravamen Mobiliario" sobre las cuentas por cobrar presentes y futuras del negocio, así como cualquier fruto, ganancia, beneficio o producto derivado de estas. Manifestó que, ese mismo día, es decir, el 29 de marzo de 2021, el Sr. Colón Rivera garantizó el préstamo mediante una garantía ilimitada. Sin embargo, afirmó que los apelantes incumplieron con los términos y condiciones del préstamo, adeudando al momento las siguientes cantidades: (1) $309,965.84 de principal; (2) $18,739.72 de intereses vencidos; (3) $3,013.52 de cargos por mora; (4) los gastos del proceso y, por último; (5) honorarios de abogado. Sostuvo que, las sumas reclamadas estaban vencidas y eran líquidas y exigibles. En vista de ello, solicitó que se declarara Ha Lugar la "Demanda" y se ordenara el pago de las cantidades antes expuestas.

En respuesta, el 4 de noviembre de 2022, los apelantes, por derecho propio, presentaron una "Contestación a la Demanda".[3] En esta, se limitaron a plantear que las cantidades que expuso la apelada en su "Demanda" no eran las que se debían, y que habían realizado pagos al préstamo que todavía no se habían registrado.

Del expediente se desprende que el foro primario brindó a las partes múltiples oportunidades para lograr un acuerdo transaccional; sin embargo, pese a los esfuerzos realizados, no

---

[2] Véase, apéndice págs. 18-19.
[3] Véase, apéndice págs. 24-25.

lograron concretarlo.[4]    A tales efectos, la apelada solicitó la continuación de los procedimientos.[5]  El 9 de mayo de 2023, el TPI emitió y notificó una "Orden" mediante la cual decretó la continuación de los procedimientos del pleito, y concedió un término a los apelantes para informar la contratación de representación legal.[6]  Posteriormente, los apelantes contrataron representante legal, y este le solicitó al TPI un plazo adicional para lograr dialogar con la apelada e intentar alcanzar un acuerdo transaccional.[7]  No obstante, dicha gestión resultó infructuosa, y la apelada reiteró su solicitud de que se continuaran los procedimientos.[8]  El 6 de septiembre de 2023, el TPI dictó y notificó una "Orden" dando por terminada las conversaciones transaccionales y ordenando la continuación de los procedimientos.[9]

Así las cosas, el 22 de septiembre de 2023, Oriental presentó una "Moción Solicitando Sentencia Sumaria".[10]  Alegó que, no existían hechos materiales en controversia y que, como cuestión de derecho, procedía dictar sentencia sumaria a su favor.  Para respaldar su solicitud, presentó los siguientes documentos: (1) el Pagaré; (2) el "Contrato de Gravamen Mobiliario"; (3) UCC1- UCC *Financing Statement*; (4) la "Garantía Limitada"; y (5) una "Declaración Jurada" de la oficial de Oriental a cargo de la administración del préstamo.  De dicha declaración jurada surge

---

[4] Véase, por ejemplo, "Moción en Cumplimiento de Orden" del 22 de noviembre de 2022 apéndice págs. 27-28; "Moción en Cumplimiento de Orden" del 21 de diciembre de 2022 apéndice págs. 30-32; "Moción en Cumplimiento de Orden y Informativa" del 20 de enero de 2023 apéndice págs. 33-34; "Moción en Cumplimiento de Orden" del 23 de enero de 2023 apéndice págs.35-36; "Moción en Cumplimiento de Orden y Informativa" del 16 de febrero de 2023 apéndice págs. 37-38; "Moción en Cumplimiento de Orden y Informativa" del 17 de marzo de 2023 apéndice págs. 40-41; y, por último, "Réplica a Moción en Cumplimiento de Orden y Informativa Radicada por la Parte Demandada el 17 de marzo de 2023" del 19 de marzo de 2023 apéndice págs. 44-46.
[5] Véase, "Moción Informativa y Cumplimiento de Orden" del 9 de mayo de 2023 apéndice págs. 48-50.
[6] Véase, apéndice pág. 51.
[7] Véase, "Orden" apéndice pág. 55.
[8] Véase, "Réplica a Moción en Cumplimiento de Orden" del 8 de agosto de 2023 apéndice págs. 57-59.
[9] Véase, "Orden" apéndice pág. 60.
[10] Véase, apéndice págs. 61-67.

que la oficial certificó las cantidades adeudadas, la exigibilidad del préstamo y que la deuda estaba vencida y era líquida y exigible. Además, junto a esta declaración acompañó un historial del préstamo que reflejaba los pagos realizados y el balance pendiente a la fecha de la solicitud de sentencia sumaria.

Por su parte, el 31 de octubre de 2023, los apelantes presentaron una "Moción en Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria".[11]   En esta reconocieron la existencia de una obligación de pago con Oriental; sin embargo, alegaron que subsistía una controversia en cuanto a la cuantía adeudada y la fecha en que, presuntamente, incumplieron con la obligación de pago.   Además, sostuvieron que Oriental, en el proceso de cobro de la deuda, incumplió con las disposiciones de la ley federal, *Federal Debt Collection Practices Act* (FDCPA), y la legislación local conocida como *Ley de Agencias de Cobro* en cuanto a la notificación de la deuda antes de radicar la demanda. Junto a su escrito, presentaron una declaración jurada aseverando que ni en la "Demanda" ni en la solicitud de sentencia sumaria se presentó evidencia que detallara o desglosara los pagos realizados al préstamo o que el balance se había reducido.

El 11 de noviembre de 2023, Oriental presentó una "Réplica Moción en Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria".[12]   Aseveró que junto a su solicitud de sentencia sumaria presentó una declaración jurada de la oficial de Oriental encargada de la administración del préstamo certificando las cantidades adeudadas.   Puntualizó que, con dicha declaración, también se incluyó un historial de préstamo que reflejaba todos los pagos al préstamo realizados por los apelantes.   Afirmó que éste también

---

[11] Véase, apéndice págs. 78-86.
[12] Véase, apéndice págs. 88-99.

reflejaba el balance de principal a la fecha del último pago que se realizó el 3 de noviembre de 2022.

Por otro lado, argumentó que la parte apelante no refutó los hechos alegados mediante declaraciones juradas contradictorias ni presentó documentación que evidenciara que el monto adeudado en el préstamo era inferior al reclamado por Oriental. Asimismo, sostuvo que la declaración jurada sometida por la parte apelante no satisfacía los requisitos establecidos en la Regla 36.3 de Procedimiento Civil, *infra*, para una oposición válida. Expresó que, esta se limitaba a expresar conclusiones subjetivas carentes de sustento probatorio, sin hacer referencia a documentos que permitieran corroborar la veracidad de sus alegaciones, y mucho menos, desvirtuar la evidencia presentada por la parte apelada.

Ahora bien, en cuanto al vencimiento, liquidez y exigibilidad de la deuda planteo que, en virtud del pagaré suscrito el 29 de marzo de 2021, la parte apelante asumió la obligación de saldar el préstamo mediante el pago de 35 cuotas mensuales de $5,017.29 cada una, que incluían principal e intereses, pagaderas los días 29 de cada mes a partir del 29 de abril de 2021, con un pago final por el saldo restante del préstamo el 29 de marzo de 2024. Indicó que, el párrafo 7 del pagaré disponía las circunstancias bajo las cuales Oriental podía declarar vencido anticipadamente el préstamo, incluyendo el incumplimiento con los pagos mensuales pactados. Afirmó que, la parte apelante en este caso fue debidamente notificada, mediante carta certificada con acuse de recibo, de la decisión de Oriental de declarar vencido el préstamo y de que las cantidades adeudadas se consideraban líquidas y exigibles. Alegó que, el recibo de dicha comunicación fue confirmada mediante el acuse de recibo correspondiente.

Puntualizó que de lo anterior se desprendía que la parte apelante incumplió con las condiciones de pago estipuladas, que

Oriental procedió a declarar el vencimiento anticipado de la obligación y que, además, notificó formalmente a la parte demandada sobre dicha aceleración y la exigencia inmediata del pago total adeudado, así como sobre la iniciación de la presente acción legal de cobro de dinero.

Por último, realizó un análisis de la ley federal y la legislación local a la cual le hizo referencia la parte apelante y concluyó que, estas no eran aplicables a los hechos del caso, tanto por la naturaleza comercial del préstamo reclamado como por la exclusión expresa de los abogados en el ejercicio de su profesión. Indicó que, la alegación de la parte apelante de no haber recibido comunicación previa sobre el incumplimiento carecía de fundamento, ya que, previo a la presentación de la "Demanda", se remitió carta certificada con acuse de recibo notificando el cobro y ejerciendo la cláusula de aceleración del préstamo. Por los motivos antes esbozados, reiteró que procedía dictar Sentencia Sumaria a su favor.

Evaluados los escritos de las partes, el TPI señaló vista argumentativa para el 7 de noviembre de 2024 con el propósito de discutir los escritos presentados por las partes.[13] En lo pertinente, de la "Minuta" de la vista se desprende lo siguiente:

> *Luego de una reunión ante el estrado con los abogados, el Tribunal indica que no se celebrará la vista argumentativa ya que las partes están en unas conversaciones. De dichas conversaciones no ponerle fin al caso por alguna transacción entre las partes, el Tribunal dictará Sentencia conforme a las alegaciones que ha presentado en su Demanda Oriental Bank.*

Ante la ausencia de un acuerdo entre las partes, el 13 de febrero de 2025, la apelada presentó una "Moción Solicitando se Dicte Sentencia".[14] Sostuvo que, en la vista ambas partes comparecieron representados por sus respectivos abogados y que

---

[13] Véase, "Orden" apéndice pág. 101.
[14] Véase, apéndice págs. 104-105.

estos informaron al Tribunal que estaban llevando a cabo conversaciones para llegar a un acuerdo. Además, indicó que, si para el 27 de diciembre de 2024 no se alcanzaba un acuerdo, la parte apelante se allanaría a que el caso se sometería para adjudicación mediante los escritos ya radicados. Afirmó que, vencido dicho término sin haberse formalizado un acuerdo, correspondía dictar sentencia sumaria a su favor.

Así las cosas, el 25 de febrero de 2025, la parte apelante presentó una "Moción en Oposición a que se Dicte Sentencia y en Solicitud de Orden".[15] Manifestó que, en la vista del 7 de noviembre de 2024, las partes acordaron retomar el proceso de negociación para poder alcanzar un acuerdo de pago que le permitiera a la parte apelante cumplir con su obligación. Sostuvo que, con este fin, la parte apelada le permitió someter ciertas ofertas. Afirmó que, en vista de ello, le cursó al representante legal de la apelada varias ofertas y que este último presuntamente le respondió que no sometería la oferta a Oriental hasta tanto enviara evidencia de su capacidad de pago. Así pues, esbozó que, ante la negativa del representante legal de remitirle las ofertas a Oriental, cursó las ofertas directamente a Oriental sin la intervención de los abogados. Señaló que, hasta el momento, Oriental no había solicitado documentación adicional ni había rechazado las ofertas cursadas. Argumentó que la falta de colaboración de Oriental para evaluar una posible alternativa de pago constituía un incumplimiento del deber de buena fe perjudicándolo injustamente. A tales efectos, sostuvo que el TPI no podía dictar sentencia hasta tanto se realizaran negociaciones de buena fe entre las partes.

El TPI expresó que, aun con el allanamiento de la parte apelante para que se dictara sentencia si no se llegaba a un

---

[15] Véase, apéndice págs. 106-109.

acuerdo, consideró evaluar y resolver las mociones pendientes de adjudicar. Así pues, el 11 de marzo de 2025[16], el TPI dictó "Sentencia Sumaria".[17] En primer lugar, realizó las siguientes determinaciones de hechos:

1. *El 29 de marzo de 2021, Oriental le otorgó a la codemandada C.C.C. Electrical Contractors Inc (Electrical) un préstamo (2407735-5) comercial a término, (préstamo) por la cantidad de $ 324,492.59, con intereses a razón del 7.75% por ciento anual fijo y vencimiento el 29 de marzo de 2024.*

2. *Electrical garantizó el préstamo mediante un Contrato de Gravamen Mobiliario, sobre las cuentas por cobrar presentes y futuras del negocio y cualquier fruto, ganancia, beneficio o producto de estas. Inscrito en el Registro de Transacciones Comerciales, del Departamento de Estado conforme a la Ley de Transacciones Comerciales del Estado Libre Asociado de Puerto Rico.*

3. *El codemandado Luis Rafael Colon Rivera garantizó además el préstamo mediante el otorgamiento de una garantía ilimitada y continua a favor de Oriental, de todo lo adeudado por Electrical.*

4. *Los demandados adeudan solidariamente a Oriental del préstamo al 21 de septiembre de 2023, las siguientes cantidades: $ 309,965.84 de principal, $48,968.78 de intereses vencidos además de los que se acumulen al tipo pactado hasta el saldo total de la deuda, $ 6,776.42 de cargos por mora, además de las que se acumulen, los gastos del proceso y una suma razonable para honorarios de abogado.*

5. *La parte demandada incumplió con los términos de pago del préstamo razón por la que Oriental declaró el mismo vencido. Las cantidades adeudadas están vencidas y son liquidas y exigibles.*

6. *El 10 de noviembre de 2021, la oficina legal de Oriental Bank, en representación de esta, le envió una carta certificada con acuse de recibo a la parte demandada, declarando el préstamo vencido y exigiendo el pago del total adeudado a esa fecha. La parte demandada acusó recibo de la carta.*

Luego, discutió las leyes que la parte apelante alegó que eran de aplicabilidad en la presente controversia y resolvió que, las leyes invocadas no eran aplicables a este caso, ya que expresamente excluían el tipo de actividad en controversia —es decir, el cobro de un préstamo de naturaleza comercial—, así como a los abogados en el ejercicio de su profesión. No obstante, puntualizó que

---

[16] Notificada el 12 de marzo de 2025.
[17] Véase, apéndice págs. 1-11.

Oriental cumplió con notificar a la parte apelante respecto al monto adeudado y a la aceleración del vencimiento del préstamo antes de presentar la "Demanda".

Por las razones antes expuestas, determinó que, de un examen de los documentos presentados junto a la "Moción Solicitando Sentencia Sumaria", así como de la oposición, la réplica y el expediente, no existía una controversia genuina sobre hechos materiales. Así pues, declaró Ha Lugar la Sentencia Sumaria que presentó Oriental y ordenó a los apelantes al pago de las siguientes sumas: (1) $309.965.84 de principal al 21 de septiembre de 2023, (2) $48,968.78 de intereses vencidos, además de los que se acumulen al tipo pactado hasta el saldo total de la deuda, (3) $6,776.42 de cargos por mora, además de los que se acumulen, y (4) los gastos del proceso y la suma de $12,000.00 por concepto de honorarios de abogado.

En desacuerdo con este dictamen, el 24 de marzo de 2025, la parte apelante presentó una "Moción de Reconsideración" reiterando sus argumentos previos.[18] En respuesta, el 4 de abril de 2025, Oriental presentó su "Moción en Cumplimiento de Orden y Oposición a Reconsideración de Sentencia".[19] Atendidos los planteamientos de ambas partes, el 9 de abril de 2025[20], el TPI dictó una "Orden" denegando la solicitud de reconsideración.[21]

Aún inconforme, los apelantes recurren ante este foro apelativo intermedio, y señalan la comisión de los siguientes errores:

> *Primer Error: El Tribunal adjudicó la demanda ignorando por completo las gestiones de transacción realizadas de buena fe por la parte apelante, las cuales no fueron rechazadas ni contestadas oportunamente por la parte demandante, lo que evidencia un patrón de*

---

[18] Véase, apéndice págs. 13-16.
[19] Véase, apéndice págs. 121-128.
[20] Notificada el 10 de abril de 2025.
[21] Véase, apéndice pág. 17.

*actuación incompatible con el deber de buena fe procesal y contractual.*

*Segundo Error: El Tribunal de Primera Instancia dictó sentencia sumaria sin que la parte apelada presentara declaración jurada completa, ni evidencia de ser los tenedores del pagaré incumpliendo con la Regla 36.5 de las de Procedimiento Civil. Es decir, sin presentar prueba admisible que acreditara que la deuda era líquida, vencida y exigible, incumpliendo así con el estándar probatorio requerido y de ser el acreedor bonafide de la deuda reclamada.*

Atendido el recurso, el 15 de mayo de 2025, emitimos una "Resolución" concediéndole a Oriental un término a vencer el 4 de junio de 2025 para presentar su alegato en oposición. Empero, la apelada radicó una "Moción de Reconsideración sobre Resolución" solicitando una prórroga hasta el 11 de junio de 2025 para instar su alegato. Evaluada su solicitud, el 2 de junio de 2025, emitimos "Resolución" otorgándole a Oriental un término final y perentorio para presentar su alegato en oposición, a vencer el 6 de junio de 2025. En observancia al término, la apelada compareció según ordenado, por ende, procedemos a resolver con el beneficio de ambos escritos.

**III.**

**-A-**

La sentencia sumaria constituye el mecanismo procesal adecuado para resolver de manera justa, rápida y económica aquellos pleitos que no contienen controversias genuinas sobre hechos esenciales y, por tanto, resulta innecesaria la celebración de un juicio. *BPPR v. Zorrilla Posada et al.*, 2024 TSPR 62. De este modo, el Tribunal solo podrá dictar sentencia sumariamente si la parte promovente demuestra "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". Reglas 36.1 y 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1-36.2. Un hecho esencial y pertinente es aquel que puede "alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo

aplicable". *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024).

La Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a), dispone que la solicitud de sentencia sumaria deberá contener lo siguiente:

> *(1) Una exposición breve de las alegaciones de las partes;*
>
> *(2) los asuntos litigiosos o en controversia;*
>
> *(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
>
> *(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
>
> *(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
>
> *(6) el remedio que debe ser concedido*

Por otro lado, la parte que se opone a que se resuelva el pleito por la vía sumaria deberá presentar su contestación dentro del término de 20 días desde que le fue notificada la moción. Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b). Si no contesta dentro de este término, la solicitud quedará sometida para la consideración del tribunal. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e).

Además, quien se opone deberá "contestar de forma tan detallada y específica como lo haya hecho la parte promovente". Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). En otras palabras, deberá: (1) refutar los párrafos, según enumerados por la parte promovente, que a su juicio están en controversia; y (2) hacer referencia a la evidencia sustancial donde se establecen los mismos. Regla 36.3(b) de Procedimiento Civil, *supra*. Así, no podrá descansar únicamente en sus alegaciones, sino que tiene que demostrar que, en efecto, posee prueba para sustanciar sus

alegaciones. *BPPR v. Zorrilla Posada et al.*, *supra*, citando a *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 328 (2013).

Ahora bien, el hecho de que la parte opositora no se presente prueba para controvertir la evidencia presentada por el promovente no supone la concesión automática de una moción de sentencia sumaria. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). El Tribunal puede denegar la solicitud si en verdad existe una controversia sustancial sobre hechos esenciales y materiales. *Íd.* Asimismo, el juzgador deberá considerar que, al evaluar la moción de sentencia sumaria, toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la forma más favorable a la parte que se opone. *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023).

No se dictará sentencia sumaria cuando: (1) existen hechos esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no se han refutado; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho esencial y pertinente; o (4) como cuestión de derecho no procede. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023). Tampoco es aconsejable dictar sentencia sumaria en pleitos donde existe controversia sobre asuntos de credibilidad, o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Cruz, López v. Casa Bella y otros*, *supra*.

Si el Tribunal determina que es necesario celebrar juicio y, por tanto, declarar No Ha Lugar la petición de sentencia sumaria que tiene ante sí, deberá cumplir con los postulados de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4. En términos literales, la aludida disposición legal lee como sigue:

> *Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio*

*solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.*

Por consiguiente, la precitada regla "exige a los tribunales que, independientemente de cómo resuelvan una Moción de Sentencia Sumaria, emitan una lista de los hechos que encontró que no están en controversia en el pleito y los que sí lo están". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 117 (2015). En palabras sencillas, nuestro ordenamiento jurídico exige que el Tribunal exprese concretamente cuáles hechos materiales están en controversia.

En cuanto al alcance de la revisión judicial, nuestro Máximo Foro ha reiterado que los tribunales apelativos estamos en igual posición que el foro primario al revisar solicitudes de sentencia sumaria. *BPPR v. Zorrilla Posada et al.*, *supra*. Es decir, como parte de nuestra función revisora, este foro apelativo deberá hacer una evaluación *de novo* para determinar si existe o no controversia sustancial o real en cuanto a algún hecho material. *Íd.* Empero, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos esenciales y pertinentes, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, *supra*. Esto implica que, en apelación, las partes no pueden esbozar nuevas teorías ni añadir prueba que no

se presentó ante el tribunal de instancia. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 611 (2023).

En fin, al revisar una sentencia sumaria dictada por el foro primario este tribunal apelativo debe:

> *1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;*
>
> *2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, supra;*
>
> *3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y*
>
> *4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. Roldán Flores v. M. Cuebas et al,* 199 DPR 664, 679 (2018).

**-B-**

El Tribunal de Primera Instancia posee gran flexibilidad y discreción para lidiar con el manejo diario de los asuntos judiciales. *In re Collazo I,* 159 DPR 141 (2003). Por esta razón, se les ha reconocido a los jueces el poder y la autoridad suficiente para conducir los asuntos ante su consideración de la forma y manera que su buen juicio les indique. *Íd.*

En ese sentido, nuestra Alta Curia ha establecido que, como norma general, el Tribunal de Apelaciones no intervendrá en el manejo del caso ante la consideración del foro primario. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). A modo de excepción, este foro revisor puede intervenir en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción o (3) se equivocó en interpretar o aplicar cualquier norma procesal o de derecho sustantivo. *Íd.* En otras palabras, "las decisiones discrecionales que toma el Tribunal de Primera

Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

**-C-**

Para que una deuda pueda ser reclamada por vía judicial, ésta deberá estar vencida, líquida y exigible. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Según ha expresado nuestro Tribunal Supremo, la deuda es líquida si la cantidad reclamada es cierta y determinada. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001). Por su parte, es exigible cuando la obligación no está sujeta a ninguna causa de nulidad y pueda demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). En resumen, una deuda es líquida cuando se sabe cuánto es lo que se debe, y se considera exigible cuando la obligación no está sujeta a ninguna causa de nulidad. Si la deuda reclamada cumple con estos criterios, el acreedor está habilitado para reclamarla ante su vencimiento.

**III.**

En su primer señalamiento de error, la parte apelante argumentó que el TPI incidió al dictar sentencia sumaria ignorando las gestiones de transacción que realizó de buena fe. Afirmó que la parte apelada no había rechazado ni contestado oportunamente las ofertas cursadas lo cual evidenciaba un patrón de actuación incompatible con el deber de buena fe procesal y contractual.

Del expediente ante nuestra consideración surge que, desde el inicio del pleito, el TPI le brindó amplia oportunidad a las partes para que llegaran a un acuerdo transaccional. Particularmente, se evidencia que las partes estuvieron en un proceso de negociación desde el 22 de noviembre de 2022 hasta el 19 de marzo de 2023, es decir, por un periodo aproximado de 4 meses. Sin embargo, estos esfuerzos resultaron ineficaces y, ante la falta de acuerdo, la

parte apelada solicitó al TPI la continuación del trámite judicial. En consecuencia, el TPI dio por terminada las conversaciones transaccionales y procedió con el curso ordinario del pleito.

Posteriormente, Oriental solicitó que se dictara sentencia sumaria a su favor. Es importante destacar que, antes de resolver dicha solicitud, el foro primario celebró una vista argumentativa el 7 de noviembre de 2024, con el fin de discutir los escritos de las partes en cuanto a la solicitud de sentencia sumaria presentada. En dicha vista, los representantes de las partes informaron al TPI que se encontraban en conversaciones y que, de no llegar a un acuerdo, el Tribunal podría dictar sentencia conforme a las alegaciones de Oriental. Ante ello, el TPI optó por cancelar la vista argumentativa y conceder una nueva oportunidad para lograr una transacción.

El 13 de febrero de 2025, a saber, aproximadamente tres (3) meses después de la vista argumentativa, la apelada informó que en la vista se estipuló que, si para el 27 de diciembre de 2024 no se alcanzaba un acuerdo, la parte apelante se allanaría a que se dictara sentencia.[22] Afirmó que, hasta el momento, no se había formalizado un acuerdo por lo que correspondía dictar sentencia sumaria a su favor. Considerando que había transcurrido un plazo más que razonable sin que se llegara a un acuerdo, y tras evaluar los argumentos de las partes y los documentos sometidos, el TPI procedió a dictar sentencia sumaria a favor de Oriental.

A la luz del tracto procesal anteriormente descrito, concluimos que el TPI no incurrió en error al dictar sentencia sumaria. Por el contrario, el expediente demuestra que dicho foro actuó conforme a su amplia discreción y dentro del marco de razonabilidad que le reconoce nuestro ordenamiento jurídico.

---

[22] Aunque de la "Minuta" no surge expresamente que el Tribunal haya establecido el 27 de diciembre de 2024 como fecha límite para llegar a un acuerdo, lo cierto es que el Sr. Colón Rivera no cuestiona este hecho, sino que, por el contrario, lo afirma en sus escritos.

Entiéndase, el foro primario otorgó múltiples y amplias oportunidades para que las partes exploraran un acuerdo transaccional, tanto al inicio del litigio como en etapas posteriores, incluyendo la suspensión de una vista argumentativa precisamente con el fin de favorecer ese proceso de negociación.

Como bien ha expresado el Tribunal Supremo de Puerto Rico, el TPI goza de gran flexibilidad y discreción para manejar los asuntos bajo su consideración y dirigir los procedimientos conforme a su buen juicio. *In re Collazo I, supra,* a la pág. 141. Es precisamente por ello que, salvo en casos excepcionales —como cuando se demuestra prejuicio, parcialidad, un craso abuso de discreción o error en la aplicación de normas sustantivas o procesales—, el Tribunal de Apelaciones no debe intervenir en su manejo del caso. *Rivera y otros v. Banco Popular, supra*, a la pág. 155; *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 434.

En este caso, no se ha demostrado que el TPI haya incurrido en ninguno de los supuestos que justifiquen la intervención apelativa. Por el contrario, el manejo del caso refleja un ejercicio prudente y razonable de su facultad discrecional. Así las cosas, el primer señalamiento de error no se cometió.

En su segundo señalamiento de error, la parte apelante argumenta que el foro primario erró al dictar sentencia sumaria sin que Oriental presentara evidencia suficiente para acreditar su condición de tenedor del pagaré, y para demostrar que la deuda estaba vencida y era líquida y exigible.

Sobre este error, debemos enfatizar que dicho planteamiento no se presentó ante el Tribunal de Primera Instancia, sino que se levanta por primera vez ante este Foro. Como es de conocimiento, un tribunal apelativo no considerará planteamientos formulados por primera vez en apelación o revisión. *Trabal Morales v. Ruiz Rodríguez,* 125 DPR 340, 351 (1990).

Aun así, queremos destacar que, del expediente no tan solo surge que Oriental presentó el pagaré objeto de controversia, sino que, además, acompañó su moción con una declaración jurada y un historial del préstamo, el cual refleja los pagos efectuados por la parte apelante y el balance principal pendiente a la fecha del último pago, realizado el 3 de noviembre de 2022. Esta evidencia documental no fue contradicha por la parte apelante mediante declaraciones juradas ni documentos que impugnaran la veracidad del pagaré o del historial sometido.

En el presente caso, del pagaré y los demás documentos surge con certeza la cuantía reclamada, el vencimiento de la deuda y la facultad de aceleración por incumplimiento, lo cual satisface los criterios de liquidez y exigibilidad. A la luz de este cuadro, y según el derecho aplicable, para que una deuda pueda reclamarse judicialmente debe ser vencida, líquida y exigible. *RMCA v. Mayol Bianchi, supra*, a la pág. 108. Por lo que, la evidencia presentada por la parte apelada es suficiente para acreditar que es tenedora del pagaré, y que la obligación reclamada está vencida, líquida y exigible.

Por las razones que anteceden, procede la confirmación del dictamen apelado.

### IV.

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, confirmamos la "Sentencia Sumaria" apelada, emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones